Your Honor, this is the first case of the morning. Call 212-0847. Nitos Puskar v. Reverend Long Dean Krco On behalf of the Appellant, Mr. John Quinn. On behalf of the Appellate, Mr. Robert T. LeGon. Good morning, everyone. Mr. Quinn. Good morning, Your Honor. This litigation between members representing a church and the church's bishop. The bishop, the defendant in this case, Bishop Longin, is a subordinate office holder of the Metropolitan Church. The Metropolitan Church is a completely independent and autonomous church that consists of congregations located throughout the country, but has its capital city located right in Third Lake, Illinois. The highest body of this church is what's called the People's Assembly. This People's Assembly is made up of delegates from each of these congregations throughout the country and also consists of some other office holders. Are all of the office holders members of the church? Everybody is a member of the church, yes. And so, essentially, the Metropolitan chose, as its form of government, to have this representative body that is its ultimate governing body, its ultimate legislative body, its ultimate control over property, over the organization of the church. This ultimate control, is it identified in documents, in some formal contract? The church has a constitution, and the constitution lays out the different bodies of the church, and the constitution also allows for the fact that only the assembly is able to amend the constitution. So, the assembly is the most powerful body and the constitution is the most powerful document. Now, it's important to understand the history of this case in that this church was actually formed as a direct response to some litigation that took place here and at the United States Supreme Court decades earlier. And, essentially, what happened was that there was a Serbian Orthodox diocese in America after, for the most part, as a response to communism in Eastern Europe, the diocese in America wished to break away from the mother church with its headquarters in Belgrade. And this got litigated here, up to the Illinois Supreme Court, to the United States Supreme Court, and ultimately, the United States Supreme Court says that you can't just break away, that the highest authority in this Serbian Orthodox church is this assembly of bishops with its seat in Belgrade, and they have the ultimate control over every diocese, including the one in America. So, they actually lost, the people here who worshipped in a church in Libertyville actually lost that church, and as a response, they had to form their own independent church with their own independently acquired property. They bought this monastery that's in Third Lake, they funded everything, they created their first constitution, which declared their independence, so even though they consist of members who are ethnically Serbian, even though they follow similar practices and traditions, they were clearly meant and established as an independent, autonomous church with their highest body being their assembly. Now, in the early 90s, they started having communications with the old church in Belgrade, and they did consider the possibility of reuniting. And when you're using the word they, are we talking about the assembly, or certain persons on behalf of the assembly, or a person at the top end of the hierarchical structure? Well, I have to admit that even that's not completely clear. The way the assembly works is the assembly, you know, it's like any assembly body, it's not going to be as nimble and is able to act in a united manner as an individual executive officer, so to speak. Now, the assembly isn't an assembly that constantly sits, either. When they have a need to make votes, they send the delegates and the assembly meets. So while the assembly is a body that has total and ultimate control, it's not a body that's constantly there micromanaging its efforts. Now, my understanding is that there were delegations that were sent at some point to Belgrade, and that high members of the churches here, churches from the Metropolitan Church, which is the independent, autonomous church headquartered in the Third Lake, and delegates did meet with representatives, I would imagine, high-ranking church officials in Belgrade. And there were discussions and there were conversations, but at no time did the assembly ever amend their constitution in giving their complete autonomy and authority over to the Belgrade church. What did happen is in 1992, they formed some common rules that they would agree to act according for a set number of years. The document is, we've referred to as the transitional regulations. The name itself implies that this isn't a permanent document. It even says in the document that it's only going to last for three years. It clearly distinguishes between the Metropolitan Church and the Belgrade Church that exists in the United States. And... In one paragraph, one article, it says that the transitional regulations are to be in effect for a period not to exceed three years, but in another article, doesn't it say that it's there to be used until the adoption of a new constitution? Yes. Isn't there some inconsistency there? Well, I don't think it's the clearest document in the world. And I do think that there's ambiguous parts of it. There's parts that are hard to understand. There's parts that probably warrant testimony and depositions of individuals who are involved with the document. So in that sense, though, aren't you calling on us, aren't you calling on the court to try to interpret that document? No, we're not doing that because the fact of the matter is that this court does not have the power to come to an interpretation of that document that's contrary to the interpretation set out by the Metropolitan and its assembly. Since this assembly is the highest body of the Metropolitan Church, this court, under deference principles, has to defer to the judgment of that body as to whether or not, as to the implications of the transitional regulations. And so where the defendants have argued that because of the transitional regulations, the assembly no longer has any power to act, the very fact that the assembly met in 1998, the assembly met in 1999, the assembly met in 2002, the assembly met in 2005, all with the purpose of deciding whether or not they want to adopt a common constitution, a constitution that would transfer. Authority to the Belgrade Church that would subordinate themselves to the Belgrade Church. The fact that they and what's clear on the record is that they never did enact that constitution. They never were able to get the votes together for the assembly to actually subordinate itself to the Belgrade Church. But what happened then in 1998 that basically got us here? Well, what happened in 1998 is when the assembly actually met to consider the proposed constitution. And my understanding is that there were debates and controversy over some of the language in the constitution, that they couldn't get the votes to support it. And so they decided that they would reconvene at a later date. They reconvened in 1999. And at the 1999 assembly, they didn't enact the constitution either. Now, the best spin that the defendants put on it is in some of the documents they filed is the defendant, as I said, he himself, the bishop, he says that he tabled the proposed constitution. So we'll untable this. We're not even voting on this. But the fact of the matter is, is that they never enacted the constitution. If they're going to say that the power has been transferred, that the authority has been transferred from the people's assembly to some other body located in Belgrade, then they need to point to the vote where the people's assembly, the only body that has the power to relinquish such authority, where they actually did that. And they didn't do that. But they freely admit that they met in 1998 to try to get that accomplished. They tried to accomplish it in 99. They tried to accomplish it in 2002. They tried to accomplish it in 2005. The reason why we're here today is because after 2005, I think the bishop realized that there was never going to be support in the assembly to unite these two churches, that that wasn't going to happen. And so the strategy changed. And at that point in time, all of a sudden, at that point in time, the bishop started and the bishop started circulating information saying, oh, no, the churches are reunited and reorganized. And the vote of the assembly doesn't matter. The assembly body doesn't matter. So essentially, where the defendant felt that the assembly had to make this vote in 98 and 99 in 2005, all of a sudden, now that vote was never necessary. It turns out it wasn't necessary. The authority had already been transferred previously. It's just not believable. Is there any sort of issue about how Bishop Longin came into the congregation? Well, Bishop Longin was, Bishop Longin originally was a member of the Belgrade Church. Perhaps he still is a member of the Belgrade Church. Regardless of which, he came to the Metropolitan and held a position in the Metropolitan. That position is defined in the constitution of the Metropolitan. It's that Metropolitan that creates that position. And under that constitution, it's undeniable that that position is subordinate to the people's assembly. When Bishop Longin assumed his position, it didn't automatically put him in some sort of superior position to the entire people's assembly. In fact, Bishop Longin, by virtue of his position, was a member of that assembly. And so he was one of the assembly. He was not greater than the assembly, but he was a part of the assembly itself. If we apply the deference that you're requesting, the doctrine, then Bishop Longin's position in this particular Metropolitan, as well as everything that happened after that, or didn't happen after that, based upon your argument, would be decided under the doctrine. Is that correct? The issue that's decided under the doctrine is that the Metropolitan has retained its independence. It's always been independent, and we can see that because it has not enacted the constitution. What they're really challenging is the vote of the constitution. And so as the Metropolitan remains independent, then they remain in control over the property that they own, and the property that is owned by the Metropolitan is held for the benefit of the Metropolitan. And that's really the protection of those property rights are really the remedies that we're asking for in this case. Did the transitional regulations provide for an assignment from the Belgrade Church to the Metropolitanate of the Bishop? Part of the agreement was that the Belgrade Church would supply a cleric to serve as bishop. And with that, were there any other articles of authority? I don't mean to be disrespectful to the organization, but I don't know what they're actually called. Did he come with any articles of authority what he was to do? Do you mean an agenda from the Belgrade Church? No, just what does the bishop do within the Metropolitanate? Well, I think he did perform administrative functions, but that does not mean that, but ultimate administrative control of the church still rested solely with the assembly. I mean, he did hold an executive position in the church, but the point is that the executive position that he holds is subordinate to the church people's assembly. And so when the church people's assembly met and voted not to unite the churches, and he starts making proclamations that the churches are united in spite of the assembly's actions and the assembly's decisions, then the members of the assembly are entitled to come to court and seek enforcement of their decisions by the court. And there's no question that the fifth assembly of the Metropolitanate diocese actually approved the transitional regulations. That vote we're clear about, correct? The transitional regulations were approved and by their wordings they're a temporary document, and we can see by the future actions of the assembly that they weren't the unification documents because they continued to hold hearings on whether or not to ultimately unite the church. Were they ever repudiated in any way subsequent to the failure when they had other meetings to vote to approve the merger? I'm sorry, I don't understand your question. Let me rephrase it. The assembly met again in 1998, 1999, and so forth, which you've already indicated. Did the assembly ever take any action to repudiate the transitional regulations? There is that inconsistency within the document itself. As far as I know, there was never a specific vote where they said, okay, the transitional regulations no longer apply. And frankly, if it's their wish to leave the regulations in place, I mean, it's their prerogative as the assembly. They have the ultimate authority to adhere to any set of regulations that they want. The selling point is that they never, ever passed any kind of resolution where they made a vote that they literally couldn't take back. They never made that vote. They never crossed that line. So the point is, is that this church has to, I mean, this court needs to, under the mandatory deference, needs to respect the decision of the metropolitan and its rejection of the common constitution. Okay, I have a question. Yes. You had said that in 2005, the bishop began to just say, we're already joined. This is already an accomplishment. Not in 2005, Your Honor. That didn't come until 2008 or 2009. Okay, my mistake. Because 2005 was the last time that they met at the assembly meeting. And that's why, quite frankly, I think it's disingenuous to suggest that the churches were already united back in 1992 when the defendant himself was an active part of these assemblies where they were holding these very votes. Okay, now here's my question. Yes. If it's 2008 or 2009, the bishop begins to say, these churches were already joined. And he points back to 1992. Your Honor, actually, I think what happened, well, what they said, they didn't say in 2008 or 2009 that the churches were already joined. They started circulating documents that said that there was some action that took place in Europe that joined the churches. Okay. What they did is they just went around the assembly as if the assembly didn't exist. They just started promulgating these documents that said that the churches were united. All right, and what would the defendant be pointing to to establish the position that that had happened? Well, prior to this litigation, I don't think the defendant pointed to anything. There wasn't a claim, oh, you know, we were united a long time ago. It seemed to me that there's just a claim that, oh, they're just starting to put that information out there. The churches are not reorganized without reference to the vote of the assembly. And what was that based on, though? Did they just make this up? Yes, Your Honor. When it came time to litigation, when it came time to litigation, they started advancing a couple different theories. One thing that they said was that there's two points in time, and this is more, I believe, an affidavit filed by the defendant, where the defendant suggested that there was, and stated this in the vaguest way possible, stated that delegations met and said conversations were had and discussions were made. And as a result of these conversations and discussions, the churches were united. So that's one thing that they pointed to. They made these vague illusions that delegates met with each other, discussions were had, and the churches became united. The other thing they point to is these transitional regulations themselves. And if you're going to have a, if you're going to, if the court's going to make a decision that effectively transfers control of an entire church, a monastic building in Third Lake, on the basis of a complete transfer of control, I sure hope it's on a lot firmer grounds than a document that states it's only supposed to last for three years, a document that continues to segregate the two churches. Do you read the transitional regulations as being consistent? Do you proffer a theory to make those two clauses consistent with one another? Which clauses, Your Honor? The three years versus until there's a new constitution. Well, my thinking is that there was wishful thinking. I think, you know, when parties start on an endeavor, everybody thinks it's going to work out in the end. Could you take the position that it expires at the end of three years, period, but if there's a constitution between today and the end of, that today, and the end of three years, the constitution would take place? I think that would be a reasonable position to take. I think, I think, but ultimately, I think that this court, under deference principles, and under the ecclesiastical abstention action, isn't really supposed to be interpreting it. The reality is that the fact that the assembly continued to meet well after these documents, to continue a common constitution, demonstrates that they continue to have authority. Their very actions of authority demonstrated their continued existence of authority. Ultimately, the assembly is the only body that can interpret the transitional regulations. Under the existing case law, you know, if you read the existing case law, whether it's from the earlier Serbian case or pretty much all the cases, the reality is that the courts aren't supposed to be reviewing the decisions or the methods or the interpretation made by the highest authority in a church. So even if this, even if, even if the, if the assembly got together and all voted that the transitional regulations meant something completely ridiculous, this court really couldn't even challenge that interpretation, because ultimately it's the highest body. They have the right to make that decision. What if the highest body, though, of the, I'm going to call it the Belgrade church, what if their highest authority makes a contrary decision? Then do we have two highest authorities that we have to somehow try to discern which is the higher of the two higher authorities? No, Your Honor, because in this case it's clear that the churches, that the churches are independent. This, this Third Lake property was purchased independently by this metropolitan body to start their own independent church. I mean, the Belgrade church has no more claiming to it than the Catholic church or the Lutheran church or any other church's highest body. You know, if the Catholic church made a proclamation in the Vatican that they now own the Third Lake property, they could say, well, we're the highest body of the Catholic church, but that's not the church we're talking about. The church we're talking about is the metropolitan body. And this is a different case than the earlier Serbian case. In the earlier Serbian case, that was the American diocese wishing to break away. They were part of the Belgrade church. They had their headquarters in Libertyville, and they wished to break away. And, of course, when they wanted to break away, they wanted to take their buildings with them. Essentially what this, really all the Serbian court case does, it says you can't take your buildings with you. Of course, the Serbian case doesn't say you can't leave and found an independent church. It says you can't take your buildings with you. So when the Supreme Court said to the, the Serbians in America that wanted to break away, you can't take your buildings with you, they got their own buildings. They're independently acquired property, and they set up their own church. And, of course, they set it up right next to Libertyville. So now you've got the capital in, you've got the center of the Belgrade church in America is in Libertyville and the center of the metropolitan church in America is in Third Lake. But they sent up a completely separate church, and that's just undeniable. It's undeniable that they set up their own separate church to exist outside of the hierarchy. And even when they put in the transitional regulations, they said, you know, for, for, they made a clear distinction. They said that we're holding our property subject to our own constitution. They put that right in the transitional regulations. They intended to make this separate. They intended to hold on to their building, their Third Lake Monastery. They intended to hold on to that until they made a clear decision from the People's Assembly on a common constitution. And they made that decision. That decision was not to enact a common constitution. And that's the decision that the defendant doesn't like. And the defendant is using his position, his, his physical position as the occupant of that church to somehow project that he has this authority that he doesn't actually have. And, and under the free exercise clause, churches have rights to organize themselves however they want. If they choose to organize in a hierarchical manner, and if they choose to have a representative body that represents churches from all over the country, they must be allowed to maintain the authority to govern their capital city. And if that requires the use of the courts, then the courts have to give them, give them use of the courts. What would be, excuse me, the name if, if there was a new metropolitanate, for lack of a better term, what, what would the name be that the Third Lake C would be? Would it, what's, what is this new Grack, Grackinica or Grackinica? They, what they've named themselves is they've, they've given themselves a long name. For my own purposes, I, I think they have, I think it's written on perhaps the front of the constitution, which I don't have in front of me. But they, they call themselves the metropolitanate of something new Grackinica. And I, I apologize, I don't even know what new Grackinica means. I just know that, that they, they've given themselves this, this super long title. And for my own purposes and my writings in this case, I decided to just take the word metropolitanate, throw in quotes, and, and move on with it. Right. Anything else, Justice Richardson? Exactly what is the remedy you're asking for? We're asking for declaratory judgment that the metropolitanate owns. Well, you're asking us to reverse this so you can go back. Oh, what the remedy we're asking for here is we're, we're asking that this, that the, the motion to dismiss based on, on judgment on pleadings be reversed and that it be remanded for further proceedings. For a disposition to determine, for a trial court to determine whether you are or you are not independent. Right. Basically, that's your point. I would, I would, I would expect that there would be an instruction that the court would have to proceed under deference principles, but. Okay. Okay. That's all. No, thank you. All right. Thank you, counsel. You'll have an opportunity for rebuttal if you choose. Thank you, Your Honor. Mr. O'Donnell. Thank you, Your Honor. Good morning. Good morning. The trial court correctly applied the ecclesiastical abstention doctrine in granting the motion for judgment on the pleadings. Let me first begin. Justice Spence, you, you responded to a statement from counsel when counsel said, and I'm paraphrasing, that the people's assembly is the only body that can interpret the transitional regulations. Well, the transitional regulations on their face, and they are attached as an exhibit to the complaint, are to govern relations between the Serbian Orthodox Church, that's the Belgrade Church as he referred to it, and the New Gračanica Metropolitanate. Those are the plaintiffs. So that, it necessarily is not based upon a determination or interpretation by only the people's assembly. It involves interpretation and application by both parties to this case, the Serbian Orthodox Church as well. What happens at the end of three years? The transitional regulations were to remain in effect until there is a common constitution between the parties.  Exhibit C to the complaint, and exhibit C is important, that is the amended articles of organization proffered by the plaintiff here. That was, those were prepared in 1998, six years, not three, six years after the transitional regulations. What did you call them again, please? Those are the second amendment, a second amendment of affidavit of organization for the Metropolitanate. Thank you. And that's exhibit C to the complaint. Now that was signed by the defendant. That was signed by the plaintiff. That was signed by the plaintiff. That was signed by Father Kercho, by Bishop Kercho on behalf of the plaintiffs. That's on behalf of the Metropolitan of New Gračanica. Yes, Bishop Kercho, at the time, Father Kercho was, signed it, but he signed it on behalf of the plaintiff. Now how does he, where is his authority to do that? At the time, his authority was on behalf of the New Gračanica, the Metropolitanate, as counsel referred to that. No, no, no, that's, you've just restated the question. Where did his authority come from for him to act on behalf of the Metropolitan Church? As the appointed bishop, and he was appointed. But from whose authority was he appointed? He was appointed a bishop on behalf, by the Serbian Orthodox Church. The Belgrade Church? Yes. So, the Belgrade Church says you have authority to act on their behalf. Correct. And that comes from? And that comes from the fact that at the point in time where this was occurring, there was an effort to reunify that. An effort which was never accomplished, correct? It was accomplished to the extent that, it was not accomplished for the purpose of there being a common constitution. In that respect, it wasn't accomplished. It was accomplished in so far as the relationship between the parties. The transitional regulations is part of that which accomplished the reunification. That was, if you will, step one. Wait a minute, wait a minute. You just said there was no reunification because there is no constitution. And what I'm saying is that there is, in effect, a reunification. Based on? Absent a common constitution. That has not been formally adopted as of yet. But the purpose of the transition. It's been 15 years? Yes. And no constitution? There is no common constitution. But the relationship exists between the parties. The transitional regulations exist between the parties to govern the parties until such time as there would be a common constitution. Now, would you agree or disagree with the proposition that the assembly of the Metropolitan Church could simply repudiate the transitional regulations? I would dispute that. Based on? And in order, because they have signed off on the transitional regulations and acknowledged in this affidavit of organization that they will remain bound by the transitional regulations. So, basically, this is a document that puts everybody in limbo forever. It doesn't put them in limbo. It provides for their governance pursuant to the transitional regulations. However, in order, in order. But my point is you can't repudiate it and it stays until we have a constitution. If we never get a constitution, we're stuck in between a rock and a hard place. I can't repudiate it and I don't want a constitution. The transitional regulations are substantive, is a substantive governing document. It doesn't simply, I wouldn't agree with the characterization that it simply puts the parties in limbo without any rules or regulations as to how. I didn't say it puts it without rules and regulations. I said it puts them in a position where they cannot do anything about it. They want to change that. They want to amend it. A constitution hasn't come to pass and I can't repudiate this agreement. So, I'm bound by this and I cannot change it. I cannot amend it. Can't do anything with it. Well, I'm bound by it and I'm proceeding, we are proceeding to achieve a common constitution. That's the purpose for. That's the purpose, but that has not come to pass. The common constitution hasn't. However, in order for a court, a trial court, to determine, for example, how long do the transitional regulations remain in effect? What do they provide with respect to property and all of those issues? One has to necessarily delve into those documents. The actions of the church, the actions of the bishop, the actions of both entities here. Both the Metropolitanate here and the Belgrade Church. That's exactly what the Supreme Court said could not occur and should not occur. Not to oversimplify, but the original Milivojevic case stood for the proposition that there the challenge was the bishop claimed that he was improperly, if you will, kicked out of the church. And he claimed that that was not done consistent with the constitution and rules and regulations and procedures that had been established by this hierarchical church. The Supreme Court said, the trial court, Illinois Supreme Court said, correct, agreed with the bishop that he had been improperly kicked out, if you will. Supreme Court said, can't get into that issue. That issue is for the hierarchical entity to determine. Isn't the threshold issue here whether or not there is even a hierarchical, pardon me, I can't say that word. Hierarchical. Yeah, there you go. Isn't that the threshold issue? No. Whether that even exists? The parties admit there's no dispute that the Belgrade Church, and for that matter, as they articulate the Metropolitan Church, are hierarchical churches, are hierarchical authorities. Right, but are they independent or are they one church? I mean, counsel raised the argument the Catholic Church could come in, the Lutheran Church, the Protestant Church down the street could come in and say, here we go. We're together. Let's assume for the sake of the court's question that they are both separate hierarchical entities. Yes. And the issue is whether or not those two hierarchical entities have reunified or are proceeding toward reunification and in that process have adopted some rules and regulations called transitional regulations that will govern them. Right. At that point, a court needs to, if you will, abstain. What is the remedy for two churches? One of which says, I am not part of you. Where's the remedy? Where do you go for a remedy? You stay within the hierarchical authority that you have agreed to abide by. But that begs the question. I didn't agree to a lifelong relationship here. At best, I did. Under the terms of that agreement. I mean, where does the plaintiff go for remedy? But to answer the court's question as to whether or not the Metropolitan did agree to abide by the transitional regulations or any other authority or whether there is or has been a reunification as they allege in their complaint that Bishop Kirchhoff has stated publicly. In order to answer that question, you have to do exactly what the Supreme Court said cannot be done. Because it is a hierarchical. These are hierarchical authorities. There are processes. There are procedures. They govern themselves. And courts cannot simply jump into the fray and say, I believe the transitional regulations apply or I believe they don't apply for whatever reason the court may determine. That's exactly what the Supreme Court said can't occur. I'm not disputing the legitimacy of the court's question. I'm just saying that in order to answer that question, one has to do exactly what the Supreme Court said can't be done. Well, if you have two different hierarchical authorities, one saying there was a merger, the other saying there was no merger, are we just then left to whoever's in possession of the property? It's a tie and the tie goes to the person in possession or what? No, the issue has to be resolved within those authorities. And this isn't simply a matter where there was a property grab, if you will. Based on the allegations in the amended complaint, these parties are clearly moving toward reunification. These parties have taken formal steps in order to reunify. These parties have made agreements that will govern themselves during that period of reunification. However long that takes. However long that takes, Your Honor. But from this court's perspective, I stay within the record for however long that takes. Under those circumstances, there is a hierarchical authority and the transitional regulations provide that the hierarchical authority that will govern the parties during this period is the Belgrade Church. So that authority, that hierarchy exists. And it's that hierarchy that the plaintiff here has to operate within. But in order to accept that Belgrade is the higher authority, we have to interpret that transitional regulations. Otherwise, you can't have it both ways. We cannot make the assumption of the truth of the statement you just made without interpreting it. So without interpreting that, we are left with Church A and Church B. And the Supreme Court said the ecclesiastical abstention doctrine prevents a court from even interpreting the transitional regulations. Agreed. And if we can't interpret it, you can't stand here and say Belgrade is the higher authority. I'm not saying Belgrade is the higher authority. That's not the conclusion I'm drawing. I'm saying that's what the transitional regulations provide. Well, we can't get into that. Correct. Then I have two parties before me. If this was not about a church, this is a simple dispute. Either we entered into an agreement or we didn't. But the fact that it is about a church is what compels the court to stay out of the dispute because it is a hierarchical structure. It provides for rules and regulations and processes for itself. And so a court necessarily needs to stay out of that. Certainly if we weren't talking about churches, there's no ecclesiastical abstention doctrine and a court can decide and interpret an agreement between the parties as it may. But the fact that it is a church is what compels the court to do as the Supreme Court stated. It's up to them. They have their process. You can't get into the issue. Just hypothetically, Your Honor, if a trial court were to start to interpret the transitional regulations and figure out what they mean and how they're to be applied, apply all of the other evidence that may be out there to give interpretation or meaning to the transitional regulations, the parties' conduct, at that point we have dove in and we are swimming in waters that the Supreme Court said we're never supposed to be in because we are necessarily delving into church conduct, church polity, church documents, interpreting and applying all of those in a manner that we're simply not supposed to. The first time I've seen this entity, the Holy Assembly of Bishops, I see in the Second Amendment organizational documents. Yes. Is that different than the People's Assembly? The Holy Assembly of Bishops is the Belgrade Church. The Holy Assembly of Bishops is the highest authority within the Belgrade Church. So the Belgrade Church doesn't have a People's Assembly. It has a Holy Assembly of Bishops. Correct. To just try to put them in some other church. Exactly. That would be a fair matchup, if you will. So I'm not certain of the Court's point, but to follow up on it. Well, I'm just asking because I'm reading and I'm not seeing similar language. I'm seeing assembly as a similar term, but then I have different... See, the important part of those articles of reorganization is the fact that it clearly states there that the Metropolitan, the People's Assembly, will be and remain and acknowledge that they are subordinate to the Holy Assembly of Bishops, i.e. the Belgrade Church. So kind of back to your argument or our argument, Justice Jorgensen, in terms of the transitional regulations. It's not simply the transitional regulations in isolation. It's the fact that six years after they were adopted, the plaintiffs here acknowledged that they're going to be governed by the transitional regulations and specifically acknowledged that those transitional regulations make them a subordinate to the Belgrade Church. When you say the plaintiffs, it's your position that the assembly adopted that? They signed it. That's what they submitted to the State of Illinois. Yes. Okay. It's a one-sided document. It's their document attached to their complaint. So if a true merger would be heaven, it sounds like they're stuck in purgatory. I like limbo better than purgatory, but maybe they're the same. Limbo, purgatory. Okay. And I don't say that to be demeaning in any sense, but it seems to me that they're stuck in this state of limbo or purgatory or whatever until one party just walks away. Is that right? No, Your Honor. If they can't agree to finalize this, are they just stuck until somebody walks away? No, Your Honor, they're not. And I'm hesitating only because in part to answer the question, I have to go outside the record, and I'm going to try to stay within the record. So they're not stuck in a limbo state or a purgatory state. Where they are is that they are, as I said earlier, they're really moving toward a common constitution. For all practicalities, if you take a look at the allegations, they have reunified in many respects. Bishop Kercho is acting as the bishop here, but he is and has publicly stated, as stated in the amended complaint, he sees himself to have reunified and to be governed by the Belgrade Church. We see the transitional regulations, which are very specific. In fact, Justice Jorgensen, it reminds me that you asked a question about what do the transitional regulations provide with respect to the church property and things like that. Article 14, entitled Church Property, clearly states that the church property is going to be governed by the Serbian Orthodox Church, i.e. Belgrade. So they do provide for that. So the transitional regulations create something more than a limbo state. We're not in a state of uncertainty. We're in a state where we are governed by specific rules and regulations clearly stated, acknowledged by the plaintiffs here, until such time as a common constitution is created. If you simply accept Bishop Kercho's comments for what they are, he is of the belief and has stated publicly that the churches have, in effect, reunified, although there's no common constitution. I think that's a lot more than limbo state, if you were. A limbo state implies some degree of uncertainty, which I don't think is applicable here. Well, and I don't want that question to be interpreted as that we are concerned about the result of this as much as following the law. This is not a results-oriented thing. But let me ask you this. Do you see this case as falling under Bruss? Bruss gave a lengthy dissertation trying to explain Milulovic. I'm sorry to mispronounce it, but I have a hard time with it. The U.S. Supreme Court case. Yes. So do you see this as falling under Bruss? Well, I do in that both cases apply the ecclesiastical abstention doctrine to come to the conclusion that there are issues that were created by the pleadings that the court simply needs to stay out of. Where Bruss, I think, most applies particularly is Bruss said that the subject matter of the dispute controls the application of the doctrine. So it's not simply the object of what you seek. It's the subject matter of the matter. And here the subject matter of the dispute would necessarily, when the plaintiffs in count one are asking for a declaration of autonomy, that necessarily would involve the interpretation of church documents, the understanding of church polity, and evidence related to church officials' actions. If the Metropolitan Church came in next week and through their assembly said we choose to step away from transitional regulations, we want our independence, what say you? I say that they need to address that issue within the hierarchical structure of the church that they at least in the first instance agreed to abide by. That issue, even that issue, is absolutely an issue that needs to be decided within the hierarchical structure of the church. That's exactly what I understand Milovojevic dictated. Okay. And then we get to Judge Spence's question. You're at an impasse. Assembly says one thing and the assembly of holy assembly of bishops says another. We're at another impasse. So it's not an impasse. Let me address both. Let's just say consistent with the first question is that they come in next week and say, you know what, we hereby, we the people's assembly have voted and decided we are not going to reunify. We are not going to abide by the transitional regulations. We're going to continue to do our own thing. That's Milovojevic. Remember, this is the church. These plaintiffs are the church that really was created as a result of Bishop Dionisi being kicked out, if you will. This is what resulted. And in that case, they were saying, you can't kick me out. Right. I understand that. But now they're saying we don't want to be reunified. It's the flip side of the same coin. We want to remain independent. Well, that's not where we are. Well, if the people's assembly says we don't want to be reunified, I believe that if we look at the Supreme Court case, the church would be happy with that as long as they walked away from everything they hadn't started over. I don't know that to be the case, Your Honor. Well, that's what happened after the Supreme Court case. That's what happened after the Supreme Court case because the issue was whether or not that church could bring forth, A, whether or not Bishop Dionisi was properly kicked out, if you will. And when there was no answer, they said, fine. Right. You've done this. We accept the doctrine. We're gone. But they had to leave everything. It's like when you take your child and say, go. You're gone. Leave all the stuff that we bought you for the last 21 years. But here, in order for it to be decided, back to the question of whether or not they could make a declaration of independence, if you will, and a formal vote where they're not going to reunify and abide by the transitional regulations, et cetera, that dispute remains a church dispute. That doesn't suddenly take the dispute outside of church governance, outside the hierarchical structure, and allow it to be decided by a circuit court. Is it your position that any time the two parties to any dispute are churches, courts are not involved? Is that a true or false statement? There are times when two churches can dispute and have that dispute decided by a court of law. What if it's a contract dispute? It could be a contract dispute. Why isn't this a contract dispute? Why isn't this a simple contract dispute? Because the contract, and I'm assuming by contract you're referring to the transitional regulations. The transitional regulations are an agreement between the parties where, in the first instance, it is acknowledged that the parties will be governed by the Holy Assembly of Bishops, the Belgrade Church, and it provides for how that's going to be done in very specific instances. Once now we're inside of the hierarchical structure of the church, that's where the issue has to be decided. The question that Your Honor poses, two churches, they enter into a contract. They want to share a parking lot. They want to share a building. How about they want to merge? A contract to move towards merging.  It's not simply two churches anymore, Your Honor. It's one church. Not until the terms of the contract are fulfilled would they be one church. But here we have a contract. Yes. And we don't have a constitution. Well, we don't have a constitution, but we have a contract. The court's question presupposed, acknowledged that we do have a contract. Right, and now we have a dispute over the contract. That dispute can only be decided within the hierarchical structure. It can only be decided that way. Is it an oversimplification to say that if it's a dispute within a church, the circuit court cannot be involved in it, cannot make any determination? But if it's a dispute outside of one church, so it's two independent separate churches, then a court can be brought in, intervene. And my answer would be yes and maybe. So I think clearly if it's within a church, it has to be decided within the hierarchical structure of the church. If it's outside of that, my maybe answer really depends on what the nature of the dispute is. If it's a dispute over a contract with a shared parking lot between a Catholic church and a Lutheran church, but they need to share the parking lot for Sunday services, well, if there's a dispute over that, I think pretty clearly that doesn't go to the hierarchical structure either. It goes to the circuit court. But if they would agree, if the Catholic church and the Lutheran church would agree that any dispute we have is going to be resolved by the Pope, what about them? Then it has to be decided by the Pope. Not us. Not you. Okay. Anything else you want to say? Thank you, sir. Thank you. Mr. Quinn. Thank you, Your Honor. Just to touch on that very last point. So essentially what counsel is saying is that if they agree that the dispute is decided by the Pope, then basically now the Lutheran church is now effectively part of the Catholic church. And that's what he's saying. Only as to the parking lot. Right. But the point is here is that it's clear that there was not a finalized unification. And because there's no finalized unification, the people's assembly remains the highest authority. And the original Supreme Court case didn't say that, if we look at the original Supreme Court case, they didn't say that the trial court should have dismissed the case outright and just not gotten involved. The Supreme Court looked at the facts and said, well, we see that the holy assembly of bishops of the Belgrade church is the highest body of the authority of the Belgrade church. And we have to defer to their judgment on whether or not to let the American diocese break away. They chose not to let them break away. We have to defer to that judgment. We can't question whether or not it's fair. But the council's point is you agreed, while the transitional regulations are in place, to defer to the Belgrade church. You also agreed to a new name by the transitional documents. The transitional documents were to govern a relationship between the two churches, but they don't give away the authority of the people's assembly. The only action that can give that away is authority. A contract can't give away, a contract can't supersede the terms of the constitution. The only way that they can give their authority away as the highest body of the metropolitan church is to change their constitutions to give away that power. It's a constitutional act that's required. Let's say that the term is three years. For that term, the people's assembly said that the holy assembly of bishops of the Serbian church is the governing authority. Did it not? I don't think in a complete manner that that would relinquish the autonomy of the... There's a word that I'm afraid to say, autocephalous. I'm assuming that meant autonomous. It's clearly in the document. I think that there are ambiguous wordings. But clearly the church kept the right to... Clearly the transitional regulations contemplates this idea that they're going to consider a future kind of constitution. It says it's supposed to... It does give it time limit. There's all these indicators in those regulations that this is not a finalized document. And if they broke an agreement with the third party, then maybe the third party has a contract claim. But the third party can't come in here and say that the highest authority of the metropolitan church doesn't exist anymore. That only the metropolitan assembly can relinquish its existence. Only it can extinguish itself. Well, what it says in Article 2 is of the transitional regulations. The period not to exceed three years until the meeting of the holy assembly of bishops, which we know is the governing body of the Serbian church, the Belgrade church, in 1995. The new name of the metropolitanate shall be governed on the basis of E. The provisions of the constitution and the new Greconica metropolitanate and its component diocese, which do not conflict with these transitional regulations. What if it says, if this regulation or these transitional regulations says that the Holy See is the governing body, that conflicts with your people's assembly? And isn't that then, doesn't the people's assembly give in to the holy assembly of bishops? Well, I would say no. I would say that the people's assembly has the unique power from their perspective to interpret this document. That this document does not, by its terms, supersede their own constitution. And they have the right to meet and decide whether or not they're going to adopt a constitution that unites the church. I don't think, you know, I don't think this is a contract case. The church is governed by their own, the church is, the metropolitanate has a constitutional right to govern itself. And this court can't question its interpretations of its own documents. And the bishop is a member of the assembly. The bishop met with the assembly in 98, met with the assembly in 99, 2002, 2005, and could not get the assembly to agree to unite the churches. The churches are not united. It's as simple as that. And until, until there's some, until the, until the metropolitan assembly agrees to a constitution where they give their authority, until they subject themselves to the Belgrave church and they cannot be considered, then they remain their independence and the deference principle requires that they... Can I ask you a question? Who signed on behalf of your client? Who signed this document on behalf of your client? The complaint? No, I'm sorry, the transitional regulations. Well, the transitional regulations, I believe... But it was an individual, correct? Yes. And did they do that with the authority of the assembly? They did it in a representative capacity. I think, I believe that the assembly agreed that they would, that I believe the assembly agreed that they would put in place these transitional regulations to govern relationships between the two churches. And that's what this document says, govern a relationship between churches for a period not to exceed three years. It contemplates that they're going to, to consider the possibility of a common constitution. They did consider the common constitution and they rejected it. The Belgrave church hasn't filed a claim here today that says otherwise. All they're hoping is that the second district and the, all they're hoping is that the courts of Illinois go away. So, as you say, that the tie goes in the runner. That because by virtue of the fact that he is occupying the building, that they can continue to, to project this error that they have the rights to this building to the point where, where people forget about it and possession becomes reality. If we remand this case to the trial court, what are you going to ask the trial court to resolve? The, the, the bishop who is a subordinate member of the, of the Metropolitan Church, who is situated in the monastery in Third Lake by virtue of his position, he doesn't own that building, he was, the Metropolitan owns it and he's there, in there by virtue of his position, has, has proclaimed that this was, that this property, this very property now belongs to a church in Belgrave. And so it's threatening the property interests of the Metropolitan. So we're asking the court to, we're asking the court to, for declaratory judgment, says this property belongs to the Metropolitan. We're asking for an injunction that says you can't transfer this property because it belongs to the Metropolitan. Does the record contain any indication that there are liens other than this pending litigation against the property? There was actually, there is actually, and I'm not sure if this is a part of the record to be perfectly honest, but there was a mortgage on the property that I believe was executed by Bishop Long in his capacity, you know, as an agent of the Metropolitan Church. Are there any liens against the property by any of the plaintiffs in this case? As individuals? Yes. I, I don't know for a fact, but I don't see how there could be. Yeah. Anything else? No, thank you. I thank you very much, counsel, for your arguments. We will take this matter under advisement. We will grant a decision in due course, and we will be in recess for a short time for our next panel.